NIMMONS, Judge.
The state appeals from the trial court’s setting aside of the jury’s guilty verdict and entering judgment of acquittal notwithstanding the verdict. We reverse.
It is abundantly clear that the evidence presented a jury question as to whether the appellee aided, abetted or assisted John Harrison in the latter’s sale of cannabis as charged in the information. Section 777.-011, Florida Statutes, provides:
Principal in first degree. — Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
At the close of all the evidence, defense counsel moved for judgment of acquittal.[1] The trial court reserved ruling thereon and submitted the case to the jury. The court gave the following jury instruction, which is the standard instruction on principals:
If two or more persons help each other commit a crime, and the defendant is one of them, the defendant must be treated as if he had done all of the things the other person or persons did if the defendant, first, knew what was going to happen; secondly, intended to participate actively or by sharing in an expected bene *1363 fit; and, third, actually did something by which he intended to help commit the crime. “Help” means to aid, plan or assist. To be a principal, the defendant does not have to be present when the crime is actually committed.
The jury returned a verdict of guilty as charged. Subsequently, however, the trial court granted the defendant’s post-verdict motion renewing his earlier motion for judgment of acquittal.
On a motion for judgment of acquittal notwithstanding the verdict, the trial court must examine the evidence in the light most favorable to the verdict in determining whether the evidence is sufficient to support the verdict; and the court must assume the truth of the evidence presented by the prosecution. United States v. Corbin, 734 F.2d 643, 650 (11th Cir.1984); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir.1985). Likewise, in Anderson v. State, 504 So.2d 1270, 1271 (Fla. 1st DCA 1986), we stated:
The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence, and where the State has brought forth competent evidence to support every element of the crime, a judgment of acquittal is not proper. Newton v. State, 490 So.2d 179, 180 (Fla. 1st DCA 1986).
tfc * * * * *
When a defendant moves for judgment of acquittal, he admits all facts in evidence adduced and every conclusion favorable to the State reasonably inferable therefrom. Busch v. State, 466 So.2d 1075, 1079 (Fla. 3d DCA 1984).
In the ease at bar, the defendant was charged with the sale or delivery of cannabis on January 19, 1989. The evidence showed that law enforcement officers of the Pensacola Police Department enlisted the aid of an informant (hereinafter “Michael”) to arrange for the purchase of cannabis from John Harrison, a suspected drug dealer.
Michael testified that he was well acquainted with Harrison and had previously purchased drugs from Harrison. Michael said that whenever he wanted to see Harrison, he would go to the home of Richard Prehn, the defendant herein. It seems that Harrison frequently stayed at the defendant’s home and spent considerable time there. In fact, according to Michael and the defendant himself, Michael had in the recent past purchased illicit drugs from Harrison in the defendant’s home in the presence and with the knowledge of the defendant. The defendant testified that whenever Michael wanted to get in touch with Harrison, Michael “knew to come by my house.”
Two days before the subject drug sale, Michael came to the defendant’s home looking for Harrison. He found both Harrison and the defendant. Michael testified that he told Harrison that he — Michael—and a friend wanted to purchase a bag of marijuana. They arranged to meet two days later at a bar known as “Players’ Uptown”. Michael testified that the defendant was in and out of the room during his conversation with Harrison. Also, the following questions and answers ensued during the prosecutor’s direct examination of Michael:
Q. When it was talked about the purchase of the bag and this friend, was it also talked about where this would occur?
A. Yes.
Q. And Mr. Prehn was party to this conversation?
A. Yes, he was, I believe.
Q. And then this was arranged I believe you said. And what were the arrangements that were made?
A. The arrangements would be that John would meet me at Players Uptown that Thursday night, that I had something to do there, and that I would be willing to purchase at that point.
When asked about the above described conversation at his residence, the defendant denied that Michael had even come by the defendant’s house on the occasion described by Michael.
Two days later, on January 19, the defendant rode with Harrison in the latter’s pickup truck to Players’. The defendant testi *1364 fied that he spotted Michael’s car whereupon Harrison parked his truck and told the defendant to go inside the bar and get Michael.
Michael testified that he and undercover officer Kelly had arrived earlier and had been waiting inside the bar. When the defendant came inside, the defendant told Michael that he and Harrison had been driving around and that they had expected to see Michael outside. When Michael introduced Kelly to the defendant, the latter appeared apprehensive and hesitant. However, the defendant’s apprehension appeared to be allayed when Michael assured the defendant that Kelly was Michael’s friend and that Kelly was “cool”. The defendant then told Michael that Harrison was out in the truck waiting for him, whereupon the defendant led Michael and Kelly to the truck.
The defendant, Michael and Kelly walked up to the truck. Kelly joined Harrison inside the truck where the actual transfer of the cannabis"took place. At that time, Michael and the defendant were standing outside the truck and did not participate in the exchange which was occurring inside the truck.
Although Prehn’s defense was that he was an unwitting pawn in the drug deal and that he did not know that he was aiding, abetting or assisting in the transaction, the prosecutor, on cross examination of the defendant, elicited the following admission:
Q. And so you went in to get Mike, and it’s when you went into the bar that you realized that a drug deal must be going on?
A. Around there, yes.
Even without that admission, there was abundant evidence of the defendant’s aiding, abetting or assisting Harrison in the commission of the subject offense. The state was clearly entitled to have this case decided by the jury which was, as reflected by its verdict,[2] convinced beyond a reasonable doubt of the defendant’s guilt.[3]
WIGGINTON, J., concurs.
ZEHMER, J., dissents.

. Counsel failed to move for judgment of acquittal at the close of the state's case-in-chief. Therefore, we are not confined solely to the state's evidence in reviewing the propriety of the appealed order. Rather, we consider all of the evidence including, as we shall see, certain admissions made by the defendant during the presentation of his case.

. The record shows that the jury's verdict of guilty was announced only 39 minutes after the court first submitted the case to the jury.

. Curiously, the defendant/appellee has not favored us with a brief.